IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>   )<br>   Plaintiff/Respondent, )<br>   )  Crim. Case No. CR-21-59-001-RAW<br>v. )<br>   )  Civ. Case No. CV-23-322-RAW<br>LEVI CODY ROOT, SR., )<br>   )<br>   Defendant/Movant. ) | |

# ORDER

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Levi Cody Root, Sr. [CR Doc. 80; CV Doc. 1]. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 92]. Defendant filed a reply. [CR Doc. 93]. Also before the court are two motions requesting a status update and expedited ruling. [CR Docs. 94 and 95].

On October 12, 2021, Defendant pleaded guilty, pursuant to a Rule 11(c)(1)(C) plea agreement, to one count of Sexual Abuse in Indian Country in violation of 18 U.S.C. §§ 2242(2)(A), 2246(2)(B), 1151, & 1152. [CR Doc. 45; CR Doc. 47]. Defendant appeared in person, and with appointed counsel, Mr. Nathan Rogers, at the waiver of indictment/change of plea hearing. [CR Doc. 45]. The plea agreement included a waiver of certain appellate and post-conviction rights. [CR Doc. 47 at 4]. Defendant specifically waived "the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)." *Id.* Defendant also waived "the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel." *Id.*

On December 22, 2021, Defendant filed a *pro se* "Judicial Notice" herein, requesting that the court "remove and replace federal attorney Nathan Rogers" and stating that Defendant desired to "withdraw his plea at [that] time." [CR Doc. 50 at 1]. The court set the matter for hearing and directed Mr. Rogers to file a response. [CR Docs. 51 and 52]. Mr. Rogers filed a response and *ex parte* supplemental response. [CR Docs. 53 and 55]. The court granted Defendant's request for new counsel, and ordered Mr. Rogers be withdrawn as attorney of record for Defendant. [CR Doc.

56 at 1]. Defendant's request to withdraw his plea was stricken, with leave for new counsel to re-file, if warranted. *Id*. Mr. Dion Custis was appointed to represent Defendant in this matter, and he entered his appearance on behalf of the Defendant on January 24, 2022. [CR Docs. 57 and 58].

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). Based upon a total offense level of 38 and a criminal history category of I, the guideline imprisonment range was 235 months to 293 months. [*PSR* at ¶ 54]. On September 28, 2022, the Honorable Bernard M. Jones sentenced Defendant to 293 months of imprisonment, to be followed by a five-year term of supervised release.[1] [CR Doc. 73]. Judgment was entered on September 30, 2022. *Id*. Defendant did not appeal.

Defendant's § 2255 motion was filed on September 25, 2023.[2] [CR Doc. 80]. Defendant claims in Ground One that counsel was ineffective for failing "to perform an independent investigation." *Id*. at 4. He contends that a "[p]re-trial investigation would have discovered exculpatory evidence, complete lack of medical evidence, and existence of coerced statements, falsely implicating [Defendant]." *Id*. Defendant further claims that "counsel failed to subject the prosecution's evidence to adversarial testing," and "[c]ounsel failed to consult medical experts due to lack of any substantial forensic evidence that the alleged crime occurred." *Id*. In addition, Defendant asserts that "[c]ounsel provided flawed legal advise [sic] rendering any plea to be NOT intelligent, knowing, and voluntary." *Id*. In Ground Two, Defendant argues that the "[p]rosecution acted in a malicious manner in bringing charges against Petitioner" and that the "[p]rosecution failed their due diligence to ensure that alleged information was verified and supported by fact, including forensic medical evidence required to survive adversarial testing." *Id*. at 5. In Ground Three, Defendant claims he "has suffered and continues to suffer from the harmful error and structural error the Court permitted throughout [his] proceedings," that "these errors range from failing to uphold the Rights of ALL within their Courtroom, but include failure to sanction prosecution in blatant malicious actions," and that he "was denied his due process rights in allowing the structural and harmful errors to occur." *Id*. at 6.

---

[1]  The case was reassigned to the undersigned on November 28, 2023. [CR Doc. 88].
[2]  The Government concedes that the § 2255 motion is timely. [CR Doc. 92 at 12].

In response, the Government contends that Defendant waived his right to file a § 2255 motion. [CR Doc. 92 at 12]. The Government further argues that Defendant's prosecutorial misconduct claim and judicial misconduct claim are procedurally barred. *Id*. at 17-19. Lastly, the Government contends that Defendant cannot establish ineffective assistance of counsel. *Id*. at 19-24.

*Ineffective Assistance of Counsel Claims*.

Defendant's claims in Ground One are based on ineffective assistance of counsel. The waiver in the plea agreement allows Defendant to pursue ineffective assistance of counsel claims in a collateral proceeding. Furthermore, the procedural default rule does not apply to ineffective assistance of counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). The court will therefore address the merits of Defendant's ineffective assistance of counsel claims.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address

3

both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

Defendant claims that counsel was ineffective for failing "to perform an independent investigation," contending that a "[p]re-trial investigation would have discovered exculpatory evidence, complete lack of medical evidence, and existence of coerced statements, falsely implicating [Defendant]." [CR Doc. 80 at 4]. Defendant further complains that "[c]ounsel failed to consult medical experts due to lack of any substantial forensic evidence that the alleged crime occurred." *Id*.

In *Hill v. Lockhart*, the Supreme Court explained that "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Defendant now asserts that the victim's mother, who was employed by DHS, had developed a new romantic relationship and wished Defendant to be gone, and that the victim was coerced to falsely implicate Defendant.[3] [CR Doc. 80 at 5]. The detailed statements provided by the victim, however, were corroborated by Defendant's sworn testimony at the change of plea hearing, as well as the factual basis for plea within the plea agreement, more specifically

---

[3]     Defendant was the victim's stepfather. [*PSR* at ¶ 12]. On August 22, 2019, the victim reported the sexual abuse to her mother. *Id*. The victim's mother reported the matter to the Oklahoma Department of Human Services ("DHS"), and met with a deputy with the Seminole County Sheriff's Office on August 23, 2019. *Id*. The victim was forensically interviewed on September 4, 2019, at the Care Center in Oklahoma City, Oklahoma. *Id*. at ¶ 13. Moreover, the victim was physically examined at the OU Children's Hospital in Oklahoma City, Oklahoma. *Id*. at ¶ 14. The victim met with a Child Care Worker for DHS. *Id*. at ¶ 15. The child's mother, the child's minor brother, and the child's minor cousin were also interviewed. *Id*. at ¶¶ 16-18.

discussed below.[4]  Defendant's claim is also clearly at odds with the Victim Impact Statements provided by the victim and victim's mother, which were reviewed by the court prior to sentencing.  [*PSR* at ¶¶ 20-21].

In summary, Defendant fails to identify what investigative tactics should have been conducted or what information would have been discovered had counsel conducted such investigation.  Defendant does not identify potentially exculpatory evidence, other than his new conclusory allegations.  Defendant has not shown that the victim's statements were coerced.  Nor does he explain how a "complete lack of medical evidence" supports his claims.

Defendant also asserts, without elaboration, that counsel failed to subject the prosecution's evidence to adversarial testing.  Defendant's allegations are conclusory and do not establish ineffective assistance of counsel under *Strickland*.  The court is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."  *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

Defendant next claims his "[c]ounsel provided flawed legal advise [sic] rendering any plea to be NOT intelligent, knowing, and voluntary."  [CR Doc. 80 at 4].  Again, as noted above, Defendant pleaded guilty to Count One of the Information, and he signed a plea agreement.  Defendant fails to explain why counsel's advice was flawed, or how the advice rendered his plea "to be not intelligent, knowing, and voluntary."

An examination of the plea agreement undermines Defendant's claim.  [CR Doc. 47].  On page 1, Defendant agreed "to voluntarily plead guilty to and admits to being guilty of" one count of Sexual Abuse in Indian Country in violation of 18 U.S.C. §§ 2242(2)(A), 2246(2)(B), 1151, & 1152.  *Id*. at 1.

On page 2, below "FACTUAL BASIS FOR PLEA" is the following language:

> The defendant agrees that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt, and that these facts

---

[4]     "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

accurately represent the defendant's provable offense conduct and specific offense characteristics:

> Beginning in or about July 2016 and continuing until in or about August, 2019, I did knowingly engage in a pattern of conduct that involved using my penis to contact the mouth of L.W. At the time, I knew that L.W. was incapable of appraising the nature of my conduct. The crimes occurred at 112 North 4th Street in Seminole, Oklahoma, and 12163 NS 3630 in Wewoka, Oklahoma. The addresses are located within the boundaries of the Seminole Nation Reservation. L.W. was an enrolled member of the Seminole Nation, a federally-recognized Indian tribe, at the time of the crimes.

*Id*. at 2. The plea agreement also included a waiver of certain appellate and post-conviction rights. *Id*. at 4. The language is unambiguous and shows the waiver was knowingly and voluntarily made. Defendant initialed every page of the plea agreement. He also signed page 5. On that page, above Defendant's signature, is the following language:

> The defendant has been represented by counsel and is fully satisfied with the services rendered by the defense attorney(s) and agrees that such representation has been competent legal representation and has provided the best result for the defendant possible under the circumstances of this case. The defendant expressly acknowledges that counsel has explained defendant's trial, sentencing, appellate and post-conviction rights; that defendant understands these rights; and that defendant knowingly and voluntarily waives and relinquishes those rights as set forth above.

*Id*. at 5. Moreover, Defendant and defense counsel, Mr. Rogers, signed page 14. On that page, above Defendant's signature, is the following language:

> ACKNOWLEDGMENTS
>
> I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it without reservation. No promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement and plea supplement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it. I do this of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.

*Id*. at 14. On that same page, above defense counsel's signature, is the following language:

> I am the defendant's counsel. I have carefully reviewed every part of this agreement with the defendant. The defendant's decision to enter into this agreement is an informed and voluntary one.

*Id*.

Defendant's claim that counsel's legal advice rendered his plea "to be not intelligent, knowing, and voluntary" is also contradicted by Defendant's sworn testimony before the Honorable Kimberly E. West at the change of plea hearing.[5] Defendant stated that he had finished the 11th grade of high school and could read, write and understand the English language. Judge West noted that Defendant did not appear to be under the influence of drugs or alcohol. Further, to make sure the record was clear, Judge West specifically asked Defendant if he was currently under the influence of any drugs or alcohol, and he replied, "no, your Honor." Defendant testified that he was not taking any prescription medications. He denied ever being confined in a hospital for mental care or mental observation and denied having been treated by a doctor for mental illness.

Judge West asked defense counsel if he had any reason to believe that his client was not mentally competent to understand and appreciate the charge against him, and the nature, purpose and consequences of this proceeding and to assist [counsel] in presenting any defenses that he may have to this charge. Mr. Rogers answered in the negative. Based upon the responses of Defendant, his counsel and the observations of the court, Judge West found Defendant was mentally competent to understand and appreciate the charge against him and the nature and consequences of the proceeding.

Defendant affirmed that he wished to waive or give up his right to a jury trial and enter a plea before the court. Counsel for the Government noted that Defendant was pleading guilty to Count One of the Information and further stated the nature of the charge against Defendant and the range of punishment. Defendant affirmed that he heard the announcement of the charge against him and the possible range of punishment on that charge. Judge West specifically informed the Defendant "that Count One is punishable by a term of imprisonment of up to Life." Counsel for the Government thereafter noted that the preliminary advisory guideline range was 235 months to 293 months of imprisonment. Defense counsel and Defendant both affirmed that the

---

[5] The change of plea hearing has not been transcribed, but the recording has been reviewed.

Government's estimate was their understanding as well. Defendant affirmed that he was ready to enter a plea at that time, and he pleaded guilty to Count One of the Information.

Defendant affirmed that he had told his attorney all of the facts and circumstances known to him about the charge against him, and that he believed his attorney was fully informed on all such matters.

Defendant was asked if he understood that he had a right to a jury trial and that only he could waive or give up that right. He answered in the affirmative.

He was specifically asked if he understood that if he pleaded guilty, he would be giving up his right to a trial and there would be no further trial of any kind either before a court or a jury. He answered in the affirmative.

Notably, Defendant was asked if his plea of guilty was made voluntarily and completely of his own free choice. Defendant stated, "yes, your Honor." Defendant was asked if he had been forced or threatened in any way or promised anything by any person to plead guilty. Defendant stated, "no, your Honor."

Counsel for the Government stated the essential terms of the plea agreement, noting in relevant part that Defendant had waived his appellate and post-conviction rights. Defendant affirmed that he heard the announcement of the terms of the plea agreement, and he affirmed that it was his understanding as well.

Defendant was asked if he was satisfied with the services of his attorney, and if he believed that counsel had done all that anyone could do as counsel to assist him in this case. Defendant answered both questions in the affirmative. Defendant was asked if his attorney had discussed the essential elements of the charge in relation to which he was entering his plea, and he replied "yes, your Honor." Defendant was asked, "Do you understand those elements?" Defendant replied, "yes."

When asked if he wanted to waive his right to a jury trial, Defendant affirmed. Defendant testified that he signed the waiver of jury form, and Judge West stated that it shall be filed of record in this case. She then said, "Sir, I'm going to ask you again, understanding the nature of the charge

against you and the effect and consequences of your plea, how do you plead, guilty or not guilty, to Count One contained in the Information?" Defendant responded, "guilty, your Honor."

Defendant was asked to tell the court what he did, or how did he commit the acts in connection with the charge against him. Defendant stated the facts relating to the charge as set forth in the plea agreement. Defense counsel was asked if he had any reason to believe that the Defendant was not mentally competent to appreciate and understand the nature, purpose and consequences of his actions at the time they were committed, and that of which the charge contained in the Information arose. Mr. Rogers replied, "no, your Honor."

At the end of the change of plea hearing, Judge West found that Defendant was mentally competent to understand and appreciate the acts he committed on or about the date alleged in the Information, and to realize the nature, purpose, and consequences of those acts at the time they were committed. Judge West was satisfied that the Defendant was fully aware of what he was doing, and that he was knowingly, intelligently, and willfully waiving his right to a trial and pleading guilty. Based on his admissions, his demeanor, and his clear and responsive answers to her questions, Judge West found that there was a factual basis for Defendant's plea of guilty, and that his plea of guilty was made voluntarily, with his understanding of the charges against him, and with the knowledge of the consequences of his plea. The court accepted Defendant's plea of guilty and found that he was guilty of Count One of the Information.

At no point during the change of plea hearing did Defendant raise complaints about Mr. Rogers. But, approximately two months later, Defendant requested that the court "remove and replace federal attorney Nathan Rogers." [CR Doc. 50 at 1]. Defendant also stated that he desired to "withdraw his plea at [that] time." *Id*. As noted hereinabove, the court set the matter for hearing and directed Mr. Rogers to file a response. [CR Docs. 51 and 52]. Mr. Rogers filed a response and *ex parte* supplemental response. [CR Docs. 53 and 55]. Judge Jones granted Defendant's request for new counsel, and ordered Mr. Rogers be withdrawn as attorney of record for Defendant. [CR Doc. 56 at 1]. Defendant's request to withdraw his plea was stricken, with leave for new counsel to re-file, if warranted. *Id*. Mr. Dion Custis was appointed to represent Defendant in this matter, and he entered his appearance on behalf of the Defendant on January 24, 2022. [CR Docs. 57 and 58]. Mr. Custis filed a response to the PSR, a sentencing memorandum, and a supplemental

sentencing memorandum prior to the sentencing on September 28, 2022. [CR Docs. 62, 66, 67, and 70]. At no point prior to or during sentencing did Defendant raise complaints about new counsel, Mr. Custis.

Lastly, the court is mindful that counsel negotiated a plea deal which resulted in a sentencing range of 235 to 293 months of incarceration. Had he been convicted at trial, Defendant was facing the possibility of serving a life sentence. And, given the weight of the evidence the Government would have presented at trial, it is unlikely that a jury would have found Defendant not guilty. [*PSR* at ¶¶ 12-18].

Defendant has not satisfied the *Strickland* test with respect to any of his claims of ineffective assistance of counsel.

### *Prosecutorial Misconduct Claim and Judicial Misconduct Claim*.

Defendant argues in Ground Two that the "[p]rosecution acted in a malicious manner in bringing charges against Petitioner" and that the "[p]rosecution failed their due diligence to ensure that alleged information was verified and supported by fact, including forensic medical evidence required to survive adversarial testing." [CR Doc. 80 at 5]. In Ground Three, Defendant claims he "has suffered and continues to suffer from the harmful error and structural error the Court permitted throughout [his] proceedings," that "these errors range from failing to uphold the Rights of ALL within their Courtroom, but include failure to sanction prosecution in blatant malicious actions," and that he "was denied his due process rights in allowing the structural and harmful errors to occur." *Id*. at 6.

In response, the Government argues that Defendant's claims "fall within the scope of the post-conviction waiver." [CR Doc. 92 at 13]. In addition, the Government contends that the claims are procedurally barred. *Id*. at 17-19. Regarding the prosecutorial misconduct claim, the Government argues that the "claim of false testimony should have been brought on appeal." *Id*. at 18. The Government notes that "Defendant points to no specific testimony that was perjured or evidence that was falsified," and that Defendant "makes blanket conclusory suggestions that prosecutors 'should have known of the lack of evidence.'" *Id*. The Government further contends that the "claim of judicial bias is futile and the record does not support such a claim," and that "this

claim is also defaulted having failed to raise it on appeal." *Id*. at 18-19. The court agrees with the Government.

The Tenth Circuit has adopted a three-part test for evaluating whether a defendant has waived his right to bring a post-conviction collateral attack. A court must consider: "(1) whether the issue appealed or challenged falls within the scope of the text of the waiver; (2) whether the waiver was knowingly and voluntarily entered into; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (applying the standard for analyzing appellate waivers announced in *United States v. Hahn,* 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) to a collateral attack proceeding).

In the case at hand, Defendant's plea agreement includes a collateral attack waiver. The language specifically states that Defendant "waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel." [CR Doc. 47 at 4]. Defendant's prosecutorial misconduct claim and judicial misconduct claim are not based on ineffective assistance of counsel. The claims clearly fall within the scope of the waiver.

Next, in order to determine whether a waiver is entered knowingly and voluntarily, a court must examine "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." *See United States v. Hahn,* 359 F.3d at 1325. The court will also "look for an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.* Again, as noted in greater detail above, the court has examined the plea agreement. The language is unambiguous, and the waiver is expressly stated therein. The plea agreement states that the defendant entered the agreement knowingly and voluntarily. Defendant initialed every page of the plea agreement, and Defendant and his counsel signed the plea agreement. The court has also reviewed the recording of the change of plea hearing. Defendant did not identify any error with the plea colloquy. The plea agreement and plea colloquy show Defendant knowingly and voluntarily waived his right to collateral review.

Regarding the third and final prong, the court must determine whether enforcing the waiver would result in a miscarriage of justice. In *Hahn*, the Tenth Circuit described four situations that would constitute a miscarriage of justice: "[1] where the district court relied on an impermissible

factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (internal quotation marks omitted).  The court finds no evidence that any of these four situations exist herein, and the collateral attack waiver is enforceable as to Defendant's prosecutorial misconduct claim and judicial misconduct claim.  As such, Defendant's prosecutorial and judicial misconduct claims are barred by his plea agreement.

The Government also points out that Defendant did not raise the prosecutorial misconduct claim or the judicial misconduct claim on appeal.  "A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citing *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)). "When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *Id.* Defendant has failed to establish cause and prejudice sufficient to overcome the procedural default rule.  Moreover, Defendant has failed to demonstrate actual innocence, meaning he has failed to support a claim for miscarriage of justice.  Defendant's prosecutorial misconduct claim and judicial misconduct claim are procedurally barred.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  Upon consideration, this court finds that Defendant cannot meet either of these standards.  This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 80; CV Doc. 1] is hereby DENIED.[6]  Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.  Defendant's motions requesting a status update and expedited ruling [CR Docs. 94 and 95] are DENIED AS MOOT.

It is so ordered this 12th day of December, 2025.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[6] The motion, files and records of this case conclusively show that Defendant is entitled to no relief.  Thus, no evidentiary hearing was held.